UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Charles Michael Geiger,                          Court File No. 14-cv-1576 (JRT/LIB)

                    Plaintiff,

v.

                                                 **REPORT AND RECOMMENDATION**

Minnesota Department of Human Services,
et al.,

                    Defendants.

This matter comes before the undersigned United States Magistrate Judge upon Defendant Scott Niemeyer's ("Defendant") Motion for Summary Judgment. [Docket No. 46]. This case has been referred to the undersigned Magistrate Judge for a Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Local Rule 72.1.

For the reasons discussed herein, the Court recommends that Defendant's Motion for Summary Judgment, [Docket No. 46], be **GRANTED** and that the Plaintiff's claim against Defendant Scott Niemeyer be **DISMISSED with PREJUDICE**.

I.     **BACKGROUND**

Plaintiff Charles Michael Geiger ("Plaintiff"), a patient civilly committed to the Minnesota Sex Offender Program ("MSOP"), proceeding *pro se*, initiated the present case on or about May 19, 2014, naming as Defendants numerous departments and employees of the State of Minnesota, including Defendant Niemeyer. (Compl. [Docket No. 1]).[1] In his May 19, 2014 Complaint, Plaintiff demanded relief pursuant to 42 U.S.C. § 1983, alleging that Defendants "have and continue to deprive Plaintiffs' [sic] of rights and privileges." (Id. at ¶ 1). Plaintiff

---

[1] Two Plaintiffs originally initiated the present case, Mr. Geiger and Kenny S. Daywitt. Mr. Daywitt has since voluntarily dismissed his claims and withdrawn from the present case. (See [Docket Nos. 12, 13, 14, and 26]).

generally referenced causes of action pursuant to 42 U.S.C. § 1983, the Minnesota State Constitution, the Patient's Bill of Rights, the Civil Commitment and Treatment Act, and "administrative rules and internal agency policies." (Id. at ¶ 2). Plaintiff sued all named Defendants in both their individual and official capacities. (Id. at § V, ¶ 9M).

Specifically, Plaintiff alleged that Defendants, collectively, were deliberately indifferent to and failed to protect Plaintiff from a sexual assault. Plaintiff alleged that on April 19, 2014, MSOP Security Counselors were training Security Counselor Scott Niemeyer to perform pat-down searches of MSOP patients. (Id. at ¶ 11). Plaintiff alleged that Defendant Niemeyer stated, "I choose you first," referring to Plaintiff, and proceeded to tightly grip Plaintiff's skin to the point of causing Plaintiff pain. (Id. at ¶ 12). Defendant Niemeyer allegedly moved his hands down Plaintiff's waist, touched Plaintiff's buttocks and butt crack, and pulled the waist of Plaintiff's pants so as to see down his pants. (Id.). Plaintiff alleged that Defendant Niemeyer grabbed Plaintiff's buttocks and groin area and touched Plaintiff's penis and testicles. (Id.). Defendant Niemeyer allegedly pinched Plaintiff's chest, stomach, and buttocks, and while attempting to "wand" Plaintiff between his legs, Defendant Niemeyer "struck him in the groin, and the buttocks." (Id.). Plaintiff alleged that he complained during the pendency of the search and that supervising Security Counselors were present during the search but said nothing. (Id.). Plaintiff alleged that "due to the extreme demonstration of deliberate indifference to the Plaintiffs' safety at the hands of the Defendants' [sic], the Plaintiffs' [sic] were senselessly and sexually assaulted at the hands of S.C. Scott Niemeyer." (Id. at ¶ 14).

On August 8, 2014, in response to Defendants' Motion to Dismiss, [Docket No. 18], Plaintiff filed an Amended Complaint.[2] (Amended Compl. [Docket No. 27]). Aside from changes to the named Defendants, Plaintiff's Amended Complaint largely replicated the allegations contained in Plaintiff's original Complaint. Plaintiff generally alleged violations of his procedural and substantive due process rights; violations of his Fourth Amendment rights; and causes of action pursuant to 42 U.S.C. § 1983, the Minnesota State Constitution, the Patient's Bill of Rights, the Civil Commitment and Treatment Act, and "administrative rules and internal agency policies." (Id. at ¶¶ 1–2). Again, Plaintiff sued all individual Defendants in both their individual and official capacities. (Id. at § V, ¶ 9J).

Plaintiff alleged a virtually identical set of facts surrounding the April 19, 2014, sexual assault as alleged in the original Complaint. Plaintiff alleges that on April 19, 2014, MSOP Security Counselors were training Security Counselor Scott Niemeyer to perform pat-down searches of MSOP patients. (Id. at ¶ 12). Plaintiff alleged that Defendant Niemeyer selected Plaintiff and proceeded to conduct a "pat-down search" (i.e., the alleged sexual assault) as alleged in the original Complaint. (Id. at ¶¶ 13–16). As a result of the alleged sexual assault, Plaintiff alleged that he has experienced flashbacks concerning sexual assaults he experienced as a child. (Id. at ¶¶ 19–25).

In his Amended Complaint, Plaintiff specifically alleged five (5) claims against Defendants collectively: one count of unreasonable search and seizure, in violation of the Fourth Amendment and the Minnesota State Constitution; one count of deliberate indifference to Plaintiff's sexual assault, in violation of the Fourteenth Amendment, the Minnesota State Constitution, and various Minnesota statutes; one count of common law failure to protect/breach

---

[2] On August 11, 2014, the Undersigned issued an Order specifically construing Plaintiff's Amended Complaint as his response to Defendants' Motion to Dismiss, [Docket No. 18]. (Text Order [Docket No. 28]).

of duty/negligence; one count of failure to equally protect Plaintiff from the sexual assault; and one count of common law intentional and negligent infliction of emotional distress. (Id. at Counts I–V).

On January 9, 2015, the Undersigned recommended granting Defendants' Motion to Dismiss, [Docket No. 18], with the exception of Count I of Plaintiff's Amended Complaint as alleged against Defendant Niemeyer in his individual capacity. (Report and Recommendation [Docket No. 35]). On March 25, 2015, United States District Court Chief Judge John R. Tunheim adopted the Report and Recommendation of the Undersigned leaving Count I of the Amended Complaint as alleged against Defendant Niemeyer, in his individual capacity, as Plaintiff's sole surviving claim. (See Order Adopting Report and Recommendation, [Docket No. 42], at 8). On February 9, 2015, Defendant filed an answer to Plaintiff's Amended Complaint, including Plaintiff's one remaining claim. (Answer to Amended Compl. [Docket No. 38]).

On January 15, 2016, Defendant filed the present Motion for Summary Judgment. [Docket No. 46]. The Court subsequently issued a briefing schedule ordering Plaintiff to file and serve his response to Defendant's motion no later than February 5, 2016, and for Defendant to file and serve a reply memorandum by no later than February 19, 2016. (Order [Docket No. 55]). Plaintiff and Defendant both filed timely responses. [Docket Nos. 57, 58]. The Court further instructed the parties that the Court would take Defendant's Motion for Summary Judgment, [Docket No. 46], under advisement on the parties' written submissions on February 19, 2016. (Order [Docket No. 55]).

Accompanying his Motion for Summary Judgment, [Docket No. 46], Defendant submitted his own affidavit, [Docket No. 49]; the affidavit of Craig Berg, who witnessed

Defendant perform the "pat search" at issue, [Docket No. 52]; and three videos which depict the incident at issue. [Docket No. 51].

Defendant, in his affidavit, averred that he searched Plaintiff according to his education, training, and experience and in the same manner he has conducted hundreds of other pat searches. (Niemeyer Aff., [Docket No. 49], at ¶ 8). While Defendant acknowledged that during the search Plaintiff complained the search was too rough, Defendant also testified that the search at issue was the same as hundreds of other searches he had conducted. (Id. at ¶ 14). Defendant further testified that he did not pinch or grab any part of Plaintiff's body; put his hands down Plaintiff's pants, or touch any part of his buttocks, groin, penis, or testicles; nor strike Plaintiff in the groin, buttocks, or anywhere else with the security wand. (Id. at ¶ 15).

Craig Berg was the security counselor who witnessed Defendant perform the pat search presently at issue. (Berg Aff., [Docket No. 52], at ¶ 3). Mr. Berg testified that Defendant performed the search in accordance with Mr. Berg's understanding of MSOP policy, and that Defendant did not pinch Plaintiff, put his hands down Plaintiff's pants, strike Plaintiff with the metal-detection security wand, nor touch Plaintiff's buttocks or genital area. (Id. at ¶ 3).

As noted above, Defendant also filed, under seal, three security videos depicting the incident which gives rise to the present case. (Geil Aff., [Docket No. 51], Ex. A). The videos are labelled Video 1140, Video 1427, and Video 1432. (Id.). Each video depicts the incident from a different angle. (Id.). In each video, Plaintiff is the MSOP client wearing a red t-shirt, and Defendant is the security counselor conducting the search on Plaintiff. (Niemeyer Aff., [Docket No. 49], at ¶ 13). The search occurs from approximately 15:21 to 15:23 per the video timestamps. (Id. at 15:21–15:23).

Video 1440 provides a direct view of the pat search. (Id.). The video shows Defendant quickly running his palms along Plaintiff's upper arms, but it does not show any indication that Defendant pinched Plaintiff. (Id.). Plaintiff then, presumably as instructed, waves his extended arms up and down a few times. (Id.). After that, Defendant pats Plaintiff's shoulder and the front of Plaintiff's torso, but again the video shows no evidence of Defendant pinching Plaintiff. (Id.). Defendant slightly raises Plaintiff's shirt to check Plaintiff's waistband, underarms, and Plaintiff's sides. (Id.). The video does not show Defendant sticking his hands into Plaintiff's pants. (Id.). Defendant then kneels to pat Defendants legs. (Id.). The video shows no evidence that Defendant pinched Plaintiff as Defendant was pat searching Plaintiff's legs. (Id.). Plaintiff then turns to face Defendant, and Plaintiff runs his hands through his own hair. (Id.). The video lastly, shows Defendant moving the metal-detector security wand around Plaintiff's person. (Id.). The video does not show Defendant striking Plaintiff with the metal-detector security wand. (Id.). The search is concluded and Plaintiff walks away. (Id.).[3]

Plaintiff filed a response to Defendant's Motion for Summary Judgment; however, Plaintiff's filing is largely non-responsive. (See Response in Opposition [Docket No. 57]).[4] In his response, Plaintiff does not contest or refute with any evidence Defendant's description of the pat search. (See Id.). Plaintiff does not present any evidence that the video of the pat search is

---

[3] In Video 1427, Plaintiff and many of the actions of Defendant are hidden behind a support pillar. (Geil Aff., [Docket No. 51], Ex. A). The actions of Defendant which are visible during the search in Video 1427 comport with the above descriptions of Video 1440. (Id.). The search at issue is not visible in Video 1432 because of the positioning of the camera. (Id.). Only ancillary clips of Plaintiff's appendages are visible in Video 1432. (Id.).

[4] For instance, although the other individual Defendants in the present case have been dismissed and all of Plaintiff's claims except his claim under the Fourth Amendment have been dismissed, Plaintiff concludes his response by noting that "Plaintiff has established that Individual Defendants had actual notice of the risk and that they were active in their deliberate indifference to look the other way rather than seeking methods to prevent the abuse from occurring." (Response in Opposition, [Docket No. 57], at 5). Plaintiff also purports to refer the present case to "the Magistrate Judge for further proceedings involving the jury trial demanded." (Id.). Further, many of the facts presented in Plaintiff's Response are not the facts of the present case, but instead, are facts copied from an order in a different, unidentified case. (Id. ).

inaccurate nor does Plaintiff contest or refute the statements of Mr. Berg or Defendant describing the pat search depicted in the video. (Id.).

## II.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT. [DOCKET NO. 46].

Defendant moves this Court for an order granting summary judgment as to the sole claim remaining in this case, Court I of Plaintiff's First Amended Complaint as asserted against Defendant in his individual capacity. (Def.'s Mot. for Summary Judgment [Docket No. 46]).

Plaintiff filed a Response in opposition to Defendant's Motion for Summary Judgment, [Docket No. 46]; however, as noted above, Plaintiff's response is largely irrelevant and non-responsive. (See Response in Opposition [Docket No. 57]). The majority of Plaintiff's Response, [Docket No. 57], is a copy of an order from a different, unidentified case addressing the merits of a claim under the Rehabilitation Act, the Americans with Disabilities Act of 1990, and the Civil Rights Act. (Id.). Plaintiff does not, in the Amended Complaint now at issue, raise any claims under the Rehabilitation Act, the Americans with Disabilities Act of 1990, or the Civil Rights Act. (Amended Compl. [Docket No. 27]). A review of the Plaintiff's response with its present altercations shows that Plaintiff did not contest or refute any of the material facts, affidavits, or videos as presented by Defendant in support of his Motion for Summary Judgment. (Id.). Plaintiff only asserts generally that he "fully disagrees with all summary judgments filed." (Id. at 4).

### A.  Standard of Review

Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. Pro. 56(a); Smutka v. City of Hutchinson, 451 F.3d 522, 526 (8th Cir. 2006). A disputed fact is "material" if it might affect the outcome of the case, and a factual dispute is

"genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the burden of bringing forward sufficient admissible evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The evidence must be viewed in the light most favorable to the nonmoving party, and the nonmoving party must be given the benefit of all reasonable inferences to be drawn from the underlying facts in the record. Mirax Chem. Prods. Corp. v. First Interstate Commercial Corp., 950 F.2d 566, 569 (8th Cir. 1991). However, the "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007).

While the burden of demonstrating the absence of any genuine issue of material fact rests on the moving party, the nonmoving party may not rest on mere allegations or denials in their pleadings, but the non-moving party must set forth specific admissible evidence-based facts showing the existence of a genuine issue. Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002). If the moving party satisfies its burden, Rule 56(e) requires the non-moving party to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); United of Omaha Life Ins. Co. v. Honea, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)). "Naked assertions, unsubstantiated by the record," made in rebuttal do not amount to sufficient evidence to preclude summary judgment. Dutton v. University Healthcare Sys., L.L.C., 136 Fed. Appx. 596 (5th Cir. 2005) (unpublished decision); see also Simms v. McDowell, No. 4:08cv–60–M, 2009 WL 3160353, at *5 (W.D.Ky. Sept. 25, 2009) (holding that

8

speculation that someone lied in an affidavit is "insufficient to defeat a motion for summary judgment."). "A properly supported motion for summary judgment is not defeated by self-serving affidavits." Frevert v. Ford Motor Co., 614 F.3d 466, 473 (8th Cir. 2010) (quoting Bacon v. Hennepin Cty. Med. Ctr., 550 F.3d 711,716 (8th Cir. 2008)). "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." Id. at 473–74. A plaintiff may not merely point to unsupported self-serving allegations, but must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor. Wilson v. Int'l Bus. Mach. Corp., 62 F.3d 237, 241 (8th Cir. 1995); Smith v. International Paper Co., 523 F.3d 845, 848 (8th Cir. 2008).

The court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purpose of ruling on a motion for summary judgment." Scott, 550 U.S. at 380. "If the moving party supports the motion with evidence, the opposing party must rebut it or the court can consider the fact undisputed." Irish v. U.S. Dept. of Justice, Civ. No. 11-2703 (MJD/JJK), 2013 WL 451314, at *2 (D. Minn. Jan. 3, 2013) (citing Fed. R. Civ. Pro. 56(e)(2)), adopted by, 2013 WL 452576, rev'd on other grounds, 564 Fed. Appx. 259 (8th Cir. 2014).

The movant is entitled to summary judgment where the nonmoving party has failed "to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp., 477 U.S. at 322. No genuine issue of fact exists in such a case because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there

must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252; <u>Davidson & Associates v. Jung</u>, 422 F.3d 630, 638 (8th Cir. 2005). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." <u>Thomas v. Corwin</u>, 483 F.3d 516, 526–27(8th Cir. 2007). If the nonmoving party relies on conclusory allegations, and fails to present evidence supporting a necessary element of a claim, then that claim cannot survive summary judgment. <u>Beyer v. Firstar Bank, N.A.</u>, 447 F.3d 1106, 1108 (8th Cir. 2006).

"Although pro se pleadings are to be construed liberally, pro se litigant are not excused from failing to comply with substantive and procedural law." <u>Burgs v. Sissel</u>, 745 F.2d 526, 528 (8th Cir. 1984). The claims of a plaintiff, even a *pro se* plaintiff, cannot survive a motion for summary judgment unless the plaintiff has set forth specific admissible facts demonstrating that there is a genuine issue for trial. See <u>Quam v. Minnehaha Cty. Jail</u>, 821 F.2d 522, 522 (8th Cir. 1987) ("Although Quam is entitled to the benefit of a liberal construction of his pleadings because of his pro se status, Federal Rule of Civil Procedure 56 remains applicable to Quam's lawsuit.").

## B. Analysis

The Court evaluates Plaintiff sole remaining claim as alleged in his Amended Complaint against Defendant Niemeyer in his individual capacity. (<u>See</u> Amended Compl., [Docket No. 27], at Count I). The Court, however, evaluates that claim in light of the presently uncontested material facts contained in the affidavits and videos submitted by Defendant. See <u>Scott</u>, 550 U.S. at 380; <u>Irish</u>, 2013 WL 451314, at *2.

For relief pursuant to 42 U.S.C. § 1983, "a plaintiff must prove (1) violation of a constitutional right, (2) committed by a state actor, (3) who acted with the requisite culpability

and causation to violate the constitutional right." McDonald v. City of St. Paul, 679 F.3d 698, 704 (8th Cir. 2012) (quoting Shrum ex rel Kelly v. Kluck, 249 F.34 773, 777 (8th Cir. 2001) (citations omitted)). Plaintiff alleges that Defendant, generally, "committed Unreasonable Searches and Seizures in Violation of the Fourth Amendment to the United States Constitution and the Minnesota Constitution[.]" (Amended Compl., [Docket No. 27], ¶ 36).

Under the Fourth Amendment, "[t]he right of the people to be secure in their persons, houses, paper, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. "Involuntary civilly committed persons retain the Fourth Amendment right to the free from unreasonable searches that is analogous to the right retained by pretrial detainees." Arnzen v. Palmer, 713 F.3d 369, 372 (8th Cir. 2013) (quoting Beaulieu v. Ludeman, 690 F.3d 1017, 1028 (8th Cir. 2012)). To determine "reasonableness" in an institutional setting, a court must balance "the need for the particular search against the invasion of personal rights that the search entails." Bell v. Wolfish, 441 U.S. 520, 558–9 (1979). In applying the balance test, a court must consider: (1) the scope of the particular intrusion; (2) the manner in which the search is conducted; (3) the justification for initiating the search; and (4) the place in which the search is conducted. See Id. at 559; Serna v. Goodno, 567 F.3d 944, 949 (8th Cir. 2009) (quoting the Bell balancing test). A court must defer to the judgment of the correctional (or institutional) official "unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of institutional security." Arnzen, 713 F.3d at 373 (quoting Beaulieu, 690 F.3d at 1029.

Construing Plaintiff's Amended Complaint, [Docket No. 27], liberally as a whole it appears he argues that the search at issue is unreasonable by the mere fact that is was conducted at all, as well as, due to the alleged manner in which it was conducted by Defendant. (See

11

Amended Compl. [Docket No. 27]). As noted above, however, the record now contains uncontested evidence that the pat search at issue was conducted in accordance with MSOP policies and procedures. The record also contains uncontested evidence that Defendant did not pinch or grab any part of Plaintiff's body; put his hands down Plaintiff's pants, or touch any part of Plaintiff's buttocks or genital area; nor strike Plaintiff in the groin, buttocks, or anywhere else with the metal-detection security wand. (See Geil Aff., [Docket No. 51], Ex. A; Berg Aff. [Docket No. 52]; Niemeyer Aff. [Docket No. 49]). Plaintiff's version of the facts in his Amended Complaint is so utterly discredited by the uncontested material facts in the record that no reasonable jury could believe him, and as such, the Court is not required to accept Plaintiff's mere allegations. See Scott, 550 U.S. at 380. Plaintiff cannot argue, therefore, that the pat search was unreasonable because it was conducted in violation of MSOP policy, and he may not argue that the search was unreasonable because he was sexually assaulted during the conduct thereof.

Instead, Plaintiff's sole remaining "reasonableness" argument is that the pat search Defendant conducted, in accordance with MSOP policy, was an "arbitrary pat-down search of plaintiff[,]" and therefore, the mere fact it was conducted at all is unreasonable under the Fourth Amendment. (See Amended Compl., [Docket No. 27], at ¶¶ 36–40).

The Government's interest in maintaining security at institutions providing the containment and treatment of civilly committed patients has been held crucial to safety as well as treatment. Morgan v. Rabun, 128 F.3d 694, 697 (8th Cir. 1997). Other Courts, including in this District, have found that institutional security is a proper justification for procedures such as pat searches, wanding, and shoe/sock removal prior to, and following, patient use of the gym and the removal of socks and shoes following kitchen work. See e.g., Semler v. Ludeman, 09-cv-732 (ADM/SRN), 2010 WL 145275, at 19 (D. Minn. Jan. 8, 2010).

12

The Court in Semler evaluated the constitutionality of a pat search conducted after a MSOP patient used a gym which was used at other times by department of corrections inmates. Id. The search at issue in that case, much like the search at issue in the present case, involved limited intrusion such as lifting the plaintiff's shirt, sweatshirt, and shorts, revealing his skin. Id. After a discussion of the Bell balancing factors, the Semler Court found the search reasonable in light of the overriding concern for security and safety. Id.

As noted above, the factors this Court must consider in evaluating the intrusion alleged by Plaintiff includes the justification, manner, location, and scope of the search. Bell, 441 U.S. at 559. This involves balancing the need for the pat search at issue against the intrusion upon Plaintiff's personal rights. See Goff v. Nix, 803 F.2d 358, 364–66 (8th Cir. 1986) (applying Bell in prison context). The kitchen where Plaintiff was working before the pat search at issue contained potentially dangerous implements and potential contraband not allowed in other parts of the institution, including extra food and the ingredients for making "hooch." (See Niemeyer Aff. [Docket No. 49], at ¶ 7). After allowing patients to work in the kitchen, the MSOP finds it necessary to perform pat searches on patient in the manner in which Defendant performed the search now at issue. Although, this type of search is not conducted privately, it is not highly intrusive and similar searches performed in similarly non-private conditions have been found constitutionally reasonable. See Semler, 2010 WL 145275, at 19.

Balanced against the need for safety and security following the return of MSOP patients from their work assignment, the Court does not find this type of search, in these circumstances, violated the Fourth Amendment. As such, Plaintiff cannot prove a violation of a constitutional right as required for relief pursuant to 42 U.S.C. § 1983, and therefore, his § 1983 claim against

Defendant Niemeyer cannot succeed. See Celetex Corp., 477 U.S. at 322; McDonald, 679 F.3d at 704.

Therefore, the Court recommends that Plaintiff's sole remaining claim against Defendant Niemeyer in his individual capacity be **DISMISSED with prejudice.**

## III.   CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant's Motion for Summary Judgment, [Docket No. 46], be **GRANTED** as set forth above, and that Plaintiff's claim against Defendant Scott Niemeyer, be **DISMISSED WITH PREJUDICE.**

Dated: ~~June~~ MAY 31, 2016

Leo I. Brisbois
United States Magistrate Judge

## N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]"  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.