**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| CHARLES MICHAEL GEIGER, | Civil No.  14-1576 (JRT/LIB) |
| Plaintiff, | **MEMORANDUM OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| SCOTT NIEMEYER, | |
| Defendant. | |

Charles Michael Geiger, MSOP-Moose Lake, 1111 Minnesota 73, Moose Lake, MN  55767, *pro se*.

Aaron Winter, Assistant Attorney General, **MINNESOTA ATTORNEY GENERAL'S OFFICE**, 445 Minnesota Street, Suite 1100, St. Paul, MN 55101, for defendant.

Plaintiff Charles Michael Geiger is a patient civilly committed to the Minnesota Sex Offender Program ("MSOP").  He initially brought this action against the Minnesota Department of Human Services ("MDHS"), MSOP, and multiple officers and employees of MDHS and MSOP.  Following a motion to dismiss, Geiger's only remaining claim is a Fourth Amendment § 1983 claim against a MSOP employee, defendant Scott Niemeyer, for a pat search he performed on Geiger on April 19, 2014.  Niemeyer has moved for summary judgment on that claim, and United States Magistrate Judge Leo I. Brisbois issued a report and recommendation ("R&R") recommending that the Court grant Niemeyer's motion.  Geiger filed timely objections.  Because the Court finds no genuine

issue of material fact over whether Geiger suffered a constitutional violation, it will overrule Geiger's objections, adopt the Magistrate Judge's R&R, and grant Niemeyer's motion for summary judgment.

## BACKGROUND[1]

Geiger is a patient under involuntary civil confinement in the MSOP.  (Am. Compl. ¶ 1, Aug. 8, 2014, Docket No. 27.)  Niemeyer worked as a security counselor at the MSOP from March 21 to July 24, 2014.  (Aff. of Scott Niemeyer ("Niemeyer Aff.") ¶ 2, Jan. 15, 2016, Docket No. 49.)  Niemeyer also worked in law enforcement between 1993 and 2009, during which time he "conducted hundreds of pat searches" and received "pat search training."  (*Id.* ¶ 5.)

On April 19, 2014, Geiger was working in the MSOP kitchen, and under the MSOP policies, each kitchen worker is pat searched at the end of his or her shift in order to prevent kitchen workers from removing contraband from the kitchen.  (Aff. of Aaron Winter ("Winter Aff."), Ex. A at 42:14-23, Jan. 15, 2016, Docket No. 50; Niemeyer Aff. ¶¶ 6-7.)  Niemeyer was being trained as a new security counselor, and was supervised by two other employees, when he conducted the pat search on Geiger.  (Niemeyer Aff. ¶¶ 3, 8; Am. Compl. ¶ 12.)  According to Geiger, Niemeyer stated: "I choose you first" and then proceeded to tightly grip Geiger's skin to the point of causing pain. (Am. Compl. ¶ 13.)  Geiger alleges that Niemeyer moved his hands down Geiger's waist; touched and

---

[1] The Magistrate Judge discussed the facts of this case at length in the R&R.  (Report and Recommendation ("R&R") at 1-7, May 31, 2016, Docket No. 60.)  The Court revisits those facts only to the extent necessary to provide context for this order.

grabbed his buttocks, penis, and testicles; and pulled the waist of his pants out in order to see down his pants. (*Id*. ¶¶ 14-15.) Geiger states that Niemeyer then pinched his chest, stomach, and buttocks, and struck him in the groin and buttocks while attempting to wand him. (*Id*. ¶ 16.) According to Geiger, he complained throughout the search and the supervising security counselors that were present said nothing. (*Id*. ¶¶ 15, 17.) Geiger alleges that this conduct amounted to sexual assault. (*Id*. ¶ 18.) Niemeyer, on the other hand, contends that he did not pinch or grab Geiger, put his hands down Geiger's pants, or strike Geiger with the security wand, and that "the search . . . was no different than hundreds of other searches [he had] conducted in the past." (Niemeyer Aff. ¶¶ 14-15.)

Three security cameras at MSOP recorded the events at issue from different angles. (Aff. of Jessica Geil ("Geil Aff."), Ex. A, Jan.15, 2016, Docket No. 51.) In each video, the search takes place from approximately 15:21:30 to 15:23:00. (*Id*.) The video titled "Enc-172-1440.mp4" ("video 1440") provides the best view of Geiger during the search, although the camera was across the room and there is a partial obstruction of Geiger's legs. The camera that captured the video titled "Enc-171-1432.mp4" ("video 1432") was located closer to the search, but, due to the angle, it only captures parts of Geiger's arm during the search, as well as another MSOP patient awaiting his pat search and another officer who observed the search. In that video, the other patient and the officer talk and laugh during much of the search. Finally, the video titled "Enc-171-1427.mp4" ("video 1427") offers a view of Niemeyer performing the search and the two others observing, but due to a podium obstructing the view, it does not show Geiger himself.

On May 19, 2014, Geiger brought the present *pro se* action against numerous departments and employees of the State of Minnesota, including Niemeyer. (Compl. ¶ 1, May 19, 2016, Docket No. 1.) On August 8, 2014, Geiger filed an Amended Complaint in response to defendant's Motion to Dismiss. (Am. Compl.) On January 9, 2015, the Magistrate Judge recommended that the Court dismiss all counts except Count I as alleged against Niemeyer in his individual capacity, which asserts a violation of Geiger's Fourth Amendment right to be free from unreasonable search and seizures. (R&R, Jan. 9, 2015, Docket No. 35.) On March 25, 2015, the Court adopted the R&R, leaving Count I as Geiger's sole surviving claim. (Order, March 25, 2015, Docket No. 42.) Niemeyer filed the present motion for summary judgment on January 15, 2016. (Mot. for Summ. J., Jan. 15, 2016, Docket No. 46.)

On May 31, 2016, the Magistrate Judge issued an R&R recommending that the Court grant Niemeyer's Motion for Summary Judgment and dismiss Geiger's claim against Niemeyer with prejudice. (R&R, May 31, 2016, Docket No. 60.) The Magistrate Judge found that this type of search, under the circumstances and in balancing the need for safety and security of MSOP patients returning from their work assignments, does not violate the Fourth Amendment. (*Id*. at 13.) Additionally, the Magistrate Judge found that based on all of the evidence, it was clear that Niemeyer conducted the search in accordance with MSOP policy. (*Id.* at 6-7, 12.) As such, the Magistrate Judge concluded that Geiger's § 1983 claim against Niemeyer could not succeed because Geiger could not prove a violation of a constitutional right pursuant to 42 U.S.C. § 1983. (*Id*. at 13-14.)

On June 9, 2016, Geiger objected to the Magistrate's Judge's recommendations, asking the Court to proceed to an evidentiary hearing.  (Pl.'s Objs. ("Objs."), June 9, 2016, Docket No. 63.)[2]   He also submitted, for the first time, an affidavit from Kenneth Steven Daywitt, another MSOP resident who witnessed the search.  (Aff. of Kenneth Steven Daywitt ("Daywitt Aff."), June 9, 2016, Docket No. 62.)

**ANALYSIS**

**I.    STANDARD OF REVIEW**

Upon the filing of a report and recommendation by a magistrate judge, "a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2); *accord* D. Minn. LR 72.2(b)(1).  "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).  "The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3); *accord* D. Minn. LR 72.2(b)(3).

Summary judgment is appropriate when the evidence demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Smutka v. City of Hutchinson*, 451 F.3d 522, 526 (8th Cir.

---

[2] On the same day, Geiger also filed a "Memorandum of Law in Opposition to Defendant's Motion to Dismiss," in which he requests an evidentiary hearing.  (Pl.'s Mem. in Opp'n, May 31, 2016, Docket No. 61.)  The Court construes this document as further objections to the R&R, but finds that it does not add anything because Geiger's objections already request an evidentiary hearing.  (*Compare id.*, *with* Objs. at 8-9.)

2006.)  "A properly supported motion for summary judgment is not defeated by self-serving affidavits."  *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473 (8th Cir. 2010.)  "Rather, the plaintiff must substantiate allegations with sufficient probative evidence that permit a finding in the plaintiff's favor."  *Id*. at 473-74.  "Although *pro se* pleadings are to be construed liberally, *pro se* litigants are not excused from failing to comply with substantive and procedural law."  *Burgs. v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984.)  The claims of a plaintiff, even a *pro se* plaintiff, cannot survive a motion for summary judgment unless the plaintiff has set forth specific admissible facts demonstrating that there is a genuine issue for trial.  *See Quam v. Minnehaha Cty. Jail*, 821 F.2d 522, 522 (8th Cir. 1987.)

## II.     GEIGER'S OBJECTIONS

### A.     Fourth Amendment Claim

Geiger objects generally to the Magistrate Judge's analysis of his § 1983 claim. Geiger reiterates his allegations in the amended complaint, including that Niemeyer's conduct during the search amounted to sexual abuse or assault. (Objs. at 3-10.)  Geiger also challenges the video evidence by stating that the camera was not positioned in a direction that would have fully viewed the incident, and that the camera was only set up to view his top half.  (Objs. at 2.)  However, the Court concurs with the Magistrate Judge's analysis, and finds that Geiger has not established a genuine issue of material fact sufficient to withstand Niemeyer's summary judgment motion.

MSOP's policy states that pat searches are to be conducted "in a manner avoiding unnecessary force, embarrassment and indignity to the client." (Winter Aff., Ex. C at 21.)[3] The Court has stated previously that similar post-work pat searches are constitutional, and that "[t]he Government's interest in maintaining security at institutions providing the containment and treatment of mental patients has been held crucial to safety as well as to treatment." *Semler v. Ludeman,* No. 09-0732, 2010 WL 145275, at \*19 (D. Minn. Jan. 8, 2010). In considering whether such a search is constitutionally permissible, "courts must defer to the judgment of correctional officials unless the record contains substantial evidence showing their policies are an unnecessary or unjustified response to problems of [institutional] security." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1029 (8th Cir. 2012) (quoting *Florence v. Bd. Of Chosen Freeholders of the Cnty. Of Burlington*, 132 S. Ct. 1510, 1513-14 (2012). Here, the post-work pat search requirement helps to ensure that patients are not smuggling potentially dangerous implements, extra food, ingredients that could be used to make hooch (illicit alcohol), or other contraband from the kitchen. (Niemeyer Aff. ¶ 7.) Geiger has previously been caught making hooch. (Winter Aff., Ex. A at 61:3-9.) Geiger himself admits the validity of such pat searches, and states that he is not challenging the constitutionality of the MSOP's search policy generally, but rather, only the single search at issue conducted by Niemeyer, which he alleges deviated from the policy. (Winter Aff. at 60-62.)

---

[3] The MSOP policy is also available online at http://www.dhs.state.mn.us/main/groups /agencywide/documents/pub/dhs16_167933.pdf.

The affidavits of Niemeyer and Craig Berg, who witnessed the search, suggest that Niemeyer's pat search of Geiger was conducted according to the MSOP's policy. Niemeyer stated that he searched Geiger in accordance with his education, training, and sixteen years of experience in which he has conducted hundreds of pat searches in law enforcement. (Niemeyer Aff. ¶ 8.)  He went on to state that

> [a]n effective pat search . . . is designed to minimize bodily contact with the subject of the search while ensuring he is not concealing any contraband.  It primarily involves applying light pressure with palm of the hand to the subject's shoulders, armpits, collar, pockets, pant legs, inside thighs, and any other areas where contraband could be hidden.

(*Id.* at ¶ 9.)  Additionally, the pat search "requires a check of the subject's waistband, which is done by placing one's hands with palms facing away from the search subject, and then using both index fingers to slightly pull the waistband away from the subject's body while running them in opposite directions around the waistband."  (*Id.* ¶ 10.)  Berg agrees that Niemeyer conducted the search according to the policy.  (Aff. of Craig Berg ("Berg Aff.") ¶ 3, Jan. 15, 2016, Docket No. 52.)

Additionally, the video footage, while not determinative, appears to support Niemeyer's version of events.  Video 1440 offers the best view of the encounter, although the Court notes that due to the distance of the camera and the partial obstruction blocking Geiger's legs, the video is not entirely conclusive. (Geil Aff., Ex. A.)  The difference between some of the events alleged by Geiger and those described by Niemeyer – between pinching and lightly touching, pulling out a waistband to check the band and pulling it out to put a hand down it, or waiving an electronic wand and hitting someone with the electronic wand – may not be obvious from this distance.  The video,

- 8 -

however, appears consistent with a typical pat-search.  There is no hint in the video that

Niemeyer was acting inappropriately with Geiger, and the other officer and patient

visible in the video do not act as if they are witnessing anything out of the ordinary.

Thus, the video itself tends to reflect Niemeyer's version of events – that he engaged in

an ordinary pat-search – and do not support Geiger's factual allegations.

In opposition to Niemeyer's motion for summary judgment before the Magistrate

Judge, Geiger offered nothing more than his allegations of what occurred as stated in his

amended complaint.  As the Magistrate Judge discussed, at the summary judgment stage

a plaintiff may not rest on his or her pleadings, but must "substantiate allegations with

sufficient probative evidence that would permit a finding in the plaintiff's favor."  (R&R

at 9 (quoting *Frevert v. Ford Motor Co.*, 614 F.3d 466, 473-74 (8th Cir. 2010).)  In light

of the video and affidavit evidence, Geiger's allegations before the Magistrate Judge

were insufficient to permit a finding in his favor, and thus, there was no genuine issue of

material fact necessitating trial.

Along with his objections, Geiger now submits additional evidence – an affidavit

by Kenneth Steven Daywitt.  (Daywitt Aff.)  Daywitt was the other MSOP patient who

witnessed the pat search, and he was also initially a plaintiff in this action who, according

to Geiger, later requested to be removed in order to file another claim.  (*Id*. ¶¶ 2-3;

Objs. at 2.)  Even if the Court considers this untimely affidavit,[4] it does not create a

genuine issue of material fact.

Daywitt's affidavit restates some of what Geiger has alleged – that the pat search

was "outside of the normal search routine" and that Niemeyer was "rough" during the pat

search.  (Daywitt Aff. ¶¶ 3-4.)  But Daywitt's specific description of the events are less

extreme than Geiger's allegations: for example, Daywitt states that Niemeyer "touched"

Geiger's groin, buttocks, and other regions of his body, in an "overt" manner, (*id.* ¶¶ 6),

which is not necessarily the same as Geiger's allegations that Niemeyer "pinch[ed] his

chest, groin, stomach, and buttocks," or that Niemeyer "grabbed [Geiger's] buttock . . .

and grabbed [Geiger's] groin area," (Am. Compl. ¶¶ 13, 15).  Similarly, Daywitt states

that Niemeyer "st[uck] his hand inside the waist line of [Geiger's] pants," (Daywitt Aff.

¶ 6), but does not corroborate Geiger's allegation that "Niemeyer pushed his hands down

[Geiger's] pants; touching [his] buttocks and his butt crack," and that he "put his hands

down the front of [Geiger's] pants touching his penis and testicles," (Am. Compl. ¶¶ 14-

15).  Daywitt also does not verify Geiger's allegation that "Niemeyer struck [Geiger] in

the groin, and buttocks with the [security] wand."  (*Id.* ¶ 16.)  Thus, the version of events

---

[4] "Although the Court has discretion to 'consider evidence presented for the first time in a party's objection to the magistrate judge's recommendation,' it is under no obligation 'to accept new evidence.'"  *United States v. Jaunich*, No. 13-183, 2014 WL 1026331, at \*12 (D. Minn. Mar. 14, 2014) (quoting *United States v. Hathaway*, No. 03-245, 2004 WL 234399, at \*4-5 (D. Minn. Jan. 23, 2004)).  In exercising its discretion on such issues, the Court should consider whether the offering party "has proffered newly discovered evidence that was unknown to the party and could not through due diligence reasonably have been discovered by the party at the time of the original hearing."  *Hathaway*, 2004 WL 234399, at \*5.  Daywitt was initially a plaintiff in this action, and there is no indication that Geiger would not have been able to submit this evidence before the Magistrate Judge.

described by Daywitt are somewhat closer to MSOP policy and Niemeyer's description

of events than to Geiger's allegations – Niemeyer admitted to touching Geiger's

"shoulders, armpits, collar, pockets, pant legs, inside thighs, and any other areas where

contraband could be hidden," and to searching Geiger's waistband by "using both index

fingers to slightly pull the waistband away from [Geiger's] body while running them in

opposite directions around the waistband to check for hidden contraband."  (Niemeyer

Aff. ¶¶ 9-10.)  The video evidence also generally fits with Niemeyer's account.  Thus,

Geiger's claim still rests primarily upon his own self-serving allegations, which,

considering all contrary evidence before the Court, are insufficient to demonstrate a

genuine issue of material fact regarding whether he suffered a constitutional violation.

Accordingly, the Court will overrule Geiger's above-described objections, adopt

the R&R, and dismiss his Fourth Amendment claim against Niemeyer.  Geiger has not

offered sufficient probative evidence to permit a finding in his favor.


**B.     Other Claims**

In his objections, Geiger also addresses various other claims that have either

already been dismissed or were never a part of this case.  He argues issues of equal

protection, qualified immunity, supplemental jurisdiction, the Fourteenth Amendment,

and that the grievance process was defective.  However, Geiger cannot "manufacture

claims, which were not pled, late into litigation for the purposes of avoiding summary

judgment." *N. States Power Co. v. Fed. Transit Admin.*, 358 F.3d 1050, 1057 (8th Cir.

2004).  And Geiger cannot reassert claims in response to summary judgment that were

already dismissed by the Court at the motion-to-dismiss stage. The only remaining claim at issue in this case was the Fourth Amendment claim against Niemeyer, and thus, the Court need not consider Geiger's objections unrelated to that claim.

### ORDER

Based on the foregoing, and all of the files, records, and proceedings herein, the Court **OVERRULES** Geiger's objections [Docket No. 61, 63] and **ADOPTS** the Report and Recommendation of the Magistrate Judge [Docket No. 60]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Niemeyer's Motion for Summary Judgment [Docket No. 46] is **GRANTED**.

2. This action is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 29, 2016
at Minneapolis, Minnesota.

_____s/ John M. Tunheim_____
JOHN R. TUNHEIM
Chief Judge
United States District Court